1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| JOSE ACOSTA, | Case No. 1:16-cv-01691-DAD-SKO |

JOSE ACOSTA,

        Plaintiff,

    v.

DIRHEM HASAN d/b/a LATINO LIQUOR;
SALEH HAZAN d/b/a LATINO LIQUOR;
and OTHMAN ALTAM,

        Defendants.

_____/

Case No. 1:16-cv-01691-DAD-SKO

**FINDINGS AND
RECOMMENDATIONS THAT
PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT BE
GRANTED IN PART**

(Doc. No. 15)

**OBJECTIONS DUE: 21 DAYS**

## I.   INTRODUCTION

On January 27, 2017, Plaintiff Jose Acosta ("Plaintiff") filed a motion for default judgment against Defendants Dirhem Hasan d/b/a Latino Liquor, Salah Hasan d/b/a Latino Liquor, and Othman Altam (collectively "Defendants").  (Doc. 15.)  No opposition to Plaintiff's motion was filed.  The Court has reviewed the motion and supporting documentation and determined that the matter was suitable for decision without oral argument pursuant to Local Rule 230(g).  As such, the hearing on the motion was vacated.  (Doc. 17.)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED IN PART in the amount of $6,634.50.

## II.   FACTUAL BACKGROUND

On November 7, 2016, Plaintiff filed a complaint pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; the California Unruh Act, California Civil Code § 51 *et seq.*; and California Health & Safety Code §§ 19955, 19959.   (Doc. 1 ("Complaint").)   The Complaint seeks an award of statutory damages, prejudgment interest on the damages, costs of suit, attorney's fees, and injunctive relief.   *Id.*   Plaintiff alleges that he requires the use of a wheelchair for mobility (Compl., ¶ 8), and the property that is the subject of this suit, Latino Liquor (the "Property"), presents numerous barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility (Compl., ¶ 10).

Defendant Othman Altam was served with the Complaint on November 10, 2016.   (Doc. 8.)   Defendants Dirhem Hasan d/b/a Latino Liquor and Salah Hasan d/b/a Latino Liquor were served with the Complaint on November 12, 2016.   (Docs. 6 & 7.)   None of the defendants responded to the Complaint.

Plaintiff requested the Clerk of Court to enter default against Defendants on December 19, 2016 (Doc. 9), which was entered that same day.   (Docs. 10, 11 & 12.)   On January 27, 2017, Plaintiff filed a motion for default judgment against Defendants, which is currently pending before the Court.   (Doc. 15.)

## III.   DISCUSSION

### A.   Legal Standard

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a).   It is within the sole discretion of the court as to whether default judgment should be entered.   *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).   A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment.   *See id.*   Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment.   *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).   The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim,

(3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *See id.*

A plaintiff is required to prove all damages sought in the complaint.  *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992).  In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint.  Fed. R. Civ. P. 54(c).  If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default.  *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages.  *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B.      Analysis**

     **1.      The *Eitel* Factors Weigh in Favor of Granting a Default Judgment**

         **a.      Prejudice to Plaintiff if Default Judgment is Not Granted**

If default judgment is not entered, Plaintiff will effectively be denied a remedy until Defendants participate and make an appearance in the litigation – which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor.  *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

         **b.      Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint.  In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought.  *See Danning v.Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not

1   well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

2        Title III of the ADA provides that "[n]o individual shall be discriminated against on the

3   basis of disability" in places of public accommodation.  42 U.S.C. § 12182(a).  "Discrimination"

4   is defined as a failure to remove "barriers . . . where such removal is readily achievable."  *Id.* at

5   § 12182(b)(2)(A)(iv); *see also Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir.

6   2011) (en banc).  Where a barrier's removal is not "readily achievable," a public accommodation

7   must make its facilities available through "alternative methods if such methods are readily

8   achievable."  42 U.S.C. § 12182(b)(2)(A)(v).

9         "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he or she]

10  is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases,

11  or operates a place of public accommodation; and (3) the plaintiff was denied public

12  accommodations by the defendant because of her [or his] disability."  *Molski v. M.J. Cable, Inc.,*

13  481 F.3d 724, 730 (9th Cir. 2007).  Further, "[t]o succeed on an ADA claim of discrimination on

14  account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the

15  existing facility at the defendant's place of business presents an architectural barrier prohibited

16  under the ADA, and (2) the removal of the barrier is readily achievable."  *Parr v. L & L Drive-Inn*

17  *Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

18        According to the complaint, Plaintiff "is substantially limited in his ability to walk," "must

19  use a wheelchair for mobility," and is thus "physically disabled" as defined by the applicable

20  California and federal laws.  (Compl., ¶ 8.)  As a store, the Property is a facility of public

21  accommodation, does not function as a residence, and its activity affects commerce.  (Compl., ¶

22  9.)  Plaintiff alleges that Defendants own, operate, or lease the Property; thus, they are allegedly

23  liable for the Property's compliance with the ADA.[1]  (Compl., ¶ 7.)

24        Plaintiff visited the Property and alleges that Defendants failed to provide barrier-free

25  access to the Property in the following ways: (1) the designated accessible parking stall and the

26  adjacent access aisle were too narrow; (2) Plaintiff had to travel across the parking lot near the

27

28  _____
[1] Defendants are jointly and severally liable for ADA violations in any of these capacities.  S*ee Botosan v. McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000).

4

driveway area to reach the store entrance from his vehicle, causing him to fear that he might be struck by the vehicles that were entering and exiting through the driveway; (3) the approach to the ramp from the parking area to the entrance was obstructed by a parked vehicle, which made it difficult for Plaintiff to maneuver his wheelchair up the ramp toward the entrance; and (4) the aisles inside the Property lacked sufficient clear width for Plaintiff's wheelchair to pass through. (Compl., ¶ 10.)

Plaintiff alleges that the removal of these architectural barriers is "readily achievable," or alternatively, the services could have been made available through alternative methods that were readily achievable.  (Compl., ¶¶ 21–22.)  As these facts are taken as true regarding Defendant following its entry of default, Plaintiff has met his burden of stating a *prima facie* Title III discrimination claim.

Pursuant to the Unruh Civil Rights Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal Civ. Code, § 51(b).  Additionally, no business establishment of any kind whatsoever shall discriminate against any person in California on account of disability.  Cal. Civ. Code, § 51.5.  The Unruh Act also incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act.  Cal. Civ. Code, § 51(f).  Here, Plaintiff alleges that Defendants denied him full and equal accommodations, advantages, facilities, privileges and services in a business establishment based on his disability.  (Compl., ¶ 38.)  Further, because Plaintiff's complaint properly alleges a prima facie claim under the ADA, Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh Civil Rights Act claim.

California Health and Safety Code, § 19955, mandates that all public accommodations constructed in California comply with the requirements of California Government Code, § 4450. Pursuant to Section 4450, "all buildings, structures, sidewalks, curbs, and related facilities, construed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities."  Cal. Gov. Code, § 4450(a).  Additionally, non-exempt public accommodations constructed prior to July 1,

1  1970, and later altered or structurally repaired, are required to comply with the same requirements

2  of the California Health and Safety Code.  Cal. Health & Safety Code, § 19959.

3      For purposes of pleading his claim, Plaintiff incorporates his prior allegations regarding the

4  barriers he encountered at the Property (Compl., ¶ 42), and further alleges that the Property is a

5  public accommodation "constructed, altered, or repaired in a manner that violates Part 5.5 of the

6  Health and Safety Code or Government Code § 4450 (or both), and that the [Property] was not

7  exempt under the Health and Safety Code § 19956" (Compl., ¶ 45).  Although substantially

8  boilerplate, this claim is sufficiently pled.  *See Loskot v. D & K Spirits, LLC,* No. 2:10-cv-0684-

9  WBS-DAD, 2011 WL 567364 at *3 (E.D. Cal. Feb. 15, 2011) (noting that, although "plaintiff's

10  complaint is largely boilerplate, it is sufficient to support the requested relief" under the ADA for

11  purposes of default judgment).  *See also Gutierrez v. Leng*, No. 1:14-CV-01027-WBS, 2015 WL

12  1498813, at *4 (E.D. Cal. Mar. 31, 2015) (same).

13      The Complaint sufficiently states Plaintiff's claim under Title III of the ADA, the Unruh

14  Civil Rights Act, and California Health and Safety Code, § 19955, and there appears to be merit to

15  the substantive allegations.  As such, these *Eitel* factors weigh in favor of default judgment.

16                        **c.    Sum of Money at Stake**

17      The fourth *Eitel* factor, the sum of money at stake, weighs in favor of granting default

18  judgment.  Default judgment is disfavored when a large amount of money is involved or is

19  unreasonable in light of the defendant's actions.  *See Truong Giang Corp. v. Twinstar Tea Corp.*,

20  No. C 06-03594-JSW, 2007 WL 1545173 at *12 (N.D. Cal. May 29, 2007).  Here, Plaintiff is

21  seeking a default judgment in the amount of $8,066.00, which includes attorney's fees and costs.

22  This is not a relatively large sum of money, nor does it appear unreasonable, subject to the

23  deductions set forth below.[2]

24                        **d.    Dispute Concerning Material Facts**

25      With regard to this factor, no genuine issues of material fact are likely to exist because the

26  allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendants

27

28  [2] Plaintiff requests statutory damages in the amount of $4,000.00 and attorney's fees and costs in the amount of
$4,066.00, for a total of $8,066.00.  (Doc. 15, 2:11–18).

have submitted nothing to contradict the well-pled allegations in the complaint.  Accordingly, this factor favors entry of default judgment.

### e.       Default Due to Excusable Neglect

Defendants failed to file responsive pleadings or oppose Plaintiff's motion for default judgment.  The Court has no evidence before it establishing that Defendants' failure to participate in the litigation is due to excusable neglect.  Thus, this factor weighs in favor of granting default judgment.

### f.       Strong Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case.  In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

### 2.       Terms of the Judgment and Proof of Damages

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff.

### a.       Injunctive Relief

Plaintiff's complaint and motion for default judgment seek an injunction requiring Defendants to make several changes and accommodations at the Property.  (Compl., ¶ 10; Doc. 15, Ex. 1, 5:16–6:8).  As the factual allegations in the Complaint are taken as true, Plaintiff is entitled to injunctive relief as requested pursuant to both state and federal law.  *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA – only injunctive relief is available for violations of Title III.").

### b.       Statutory Damages

The Unruh Civil Rights Act provides for, among other things, a minimum statutory damages amount of $4,000 per violation.  Cal. Civ. Code § 52(a); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005) (the Unruh Act "provides for statutory damages up to a maximum of three times the actual damages but no less than $4,000 for each instance of discrimination").  A violation of the ADA constitutes a violation of the Unruh Act.  As such, Plaintiff asserts that he is entitled to $4,000 in statutory damages pursuant to the California Civil

Code § 52(a).  (Compl., ¶ 40.)

Plaintiff has sufficiently alleged facts indicating that he visited the Property and encountered barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property.  (Compl., ¶¶ 10-11.)  Thus, Plaintiff is entitled to an award of $4,000 in statutory damages.

### c.   Attorney's Fees and Costs of Litigation

Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs, in the court's discretion.  California Civil Code, § 55, also provides for attorney's fees and costs for obtaining injunctive relief; section 54.3 provides fees for recovery of damages to enforce the "full and equal access" guaranteed to disabled persons by Section 54.1.

Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate.  *Ferland v. Conrad Credit Corp*, 244 F.3d 1145, 1146–48 (9th Cir. 2001).  The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts.  First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  [*See D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990); *Hensley v. Eckerhart*, 461 U.S. 424,] 461 (1983)].  The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed.  *See Hensley*, 461 U.S. at 433.
>
> A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary."  *Id.* at 434.  Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar.  [Footnote omitted]  *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation).  The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high.  *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,

1   478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at
2   897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*,
    879 F.2d 481, 487 (9th Cir. 1989).

3   *Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

4        Here, Plaintiff seeks an award of $2,514.00 for total billable time spent on the case as well

5   as $1,552.00 for costs and litigation expenses.  (Doc. 15-1, 7:27–9:7.)   Specifically, Plaintiff

6   requests (1) $1,410.00 for 4.7 hours of work expended by Tanya Moore, Esq., at an hourly rate of

7   $300; (2) $667.00 for 5.8 hours spent by paralegal Whitney Law at an hourly of $115; and

8   (3) $437.00 for 4.6 hours spent by paralegal David Guthrie at an hourly rate of $95.  (Doc. 15-1,

9   9:2–7.)

10                    **(i)      Ms. Moore's Time Expended and Hourly Rate**

11        The Court finds that the number of hours Ms. Moore billed in this case is not reasonable

12   given the nature of this case and Ms. Moore's experience in these types of actions.  On October

13   27, 2016, Ms. Moore recorded 1.50 hours (90 minutes) finalizing the complaint prepared by

14   paralegal David Guthrie and reviewing "information gathered during prefiling investigation, all

15   communications with the client re[garding] experience at the facility, [and] research re BO PO."

16   (Doc. 15-2, Ex. A.)   That entry also recorded time for "[e]nsur[ing] factual allegations are

17   supported," instructing an unknown individual regarding "filing of the complaint and

18   communications with the client re same," and instructing her paralegal regarding "preparation of

19   all required supporting documents for filing."   (Doc. 15-2, Ex. A.)   Based upon the Court's

20   familiarity with the actions filed by Ms. Moore's firm in this court, the Court is aware that this is

21   basically a form complaint.  The Complaint filed in this action is nearly identical to complaints

22   filed by Ms. Moore in dozens of other actions in this Court, with only the names of the parties and

23   the allegations in paragraph ten changed to reflect the facts specific to this case.  On October 26,

24   2016, paralegal David Guthrie also billed 0.80 hours drafting the complaint and reviewing

25   supporting information, and on October 27 2016, paralegal Whitney Law also recorded 0.40 hours

26   reviewing and revising the draft complaint.  (Docs. 15-4, Ex. A; 15-6, Ex. A.)  The Court finds

27   that, given the additional time spent by Mr. Guthrie and Ms. Law, .5 hours of Ms. Moore's time is

28   sufficient to draft the complaint, review supporting information, and provide instruction as to

9

filing.  The Court will therefore deduct 1.0 hour from Ms. Moore's time entry on October 27, 2016.

Finally, on January 24, 2017, Ms. Moore spent 2.5 hours (150 minutes) communicating with Ms. Law regarding preparation of the motion for default judgment , reviewing and revising the draft and declarations, and reviewing time and expense records.  (Doc. 15-2, Ex. A.)  Ms. Law reported spending a total of 3.4 hours (204 minutes) preparing the motion for entry of default judgment and supporting documents between January 23 and 27, 2017.  (Doc. 15-4, Ex. A.)  The motion for default judgment filed in this case is nearly identical to motions for default judgment filed by Ms. Moore in other actions before this Court.  "Accordingly, the Court finds that one hour of Ms. Moore's time and one hour of Whitney Law's time is sufficient to prepare the motion."  *Gutierrez*, 2015 WL 1498813, at *9 (quoting *Moore v. E-Z-N-Quick*, No. 1:13-cv-01522-LJO-SAB, 2014 WL 1665034 (E.D. Cal. Apr. 24, 2014)).  *See also Trujillo v. Ali*, No. 1:16-cv-00694-LJO-SKO, 2016 WL 6902313, at *7 (E.D. Cal. Nov. 23, 2016).  The Court will therefore deduct 1.5 hours from Ms. Moore's time entries, and 2.4 hours from Ms. Law's time entries, that are related to the preparation and filing of the motion for default judgment.

With regard to the hourly rate to be charged, courts generally calculate these rates according to the prevailing market rates in the relevant legal community.  *Blum*, 465 U.S. at 895.  In general, courts use the rates of attorneys practicing in the forum district, here, the Eastern District of California, Fresno.  *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1993); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1488 (9th Cir. 1991).  The fee applicant bears the burden of producing sufficient evidence that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 895 n.11.

Plaintiff asserts that Ms. Moore specializes in representing plaintiffs in disability actions, and Ms. Moore's declaration states she has filed and successfully prosecuted close to 1,000 civil rights actions, she has handled numerous litigation matters through trial, and has been practicing law for over fifteen years, of which seven has been spent specializing in disability access litigation.  (Doc. 15-2, ¶¶ 4–5.)  She usually bills at $400 per hour, but has reduced her hourly rate

in this case to $300.  (Docs. 15-1, 7:23–26; 15-2, ¶ 6.)  Ms. Moore asserts an hourly rate of $300 has been found reasonable for Ms. Moore's work in other ADA cases in the Fresno division of this District, and should be awarded here.  (Doc. 15-1, 7:19–20.)  However, this Court, in a detailed opinion, previously deemed Ms. Moore's hourly rate of $300 unreasonably high and instead found that "an hourly rate of $250, the rate fixed by the *Kalani* court, is appropriate to compensate Ms. Moore for her time expended in this litigation based on her level of civil rights experience and expertise in ADA litigation."  *Moore v. Chase, Inc.*, No. 1:14-CV-01178-SKO, 2016 WL 3648949, at *3 (E.D. Cal. July 7, 2016) (citing *Kalani v. Statewide Petroleum, Inc.*, No. 2:13-cv-02287-KJM-AC, 2014 WL 4230920, at *6 (E.D. Cal. Aug. 24, 2014)).  *See also Trujillo*, 2016 WL 6902313, at *7.  Accordingly, it is recommended that Plaintiff be awarded the sum of $550.00 for work performed by Ms. Moore.[3]

### (iii)   Paralegal Rate and Time Expended

Plaintiff seeks compensation for 5.8 hours expended by paralegal Whitney Law at $115 per hour, and 4.6 hours expended by paralegal David Guthrie at $95 per hour.  (S*ee* Docs. 15-1, 7:19–9:7; 15-4; 15-6.)  Plaintiff refers the Court to *Moore v. E-Z-N Quick*, 2014 WL 1665034, for the proposition that courts in this district have determined that $115 per hour to be a reasonable rate.  However, as the Court more recently found in *Moore v. Chase, Inc*., the "prevailing hourly rates for paralegals in the Eastern District . . . [is] $75 per hour."  2016 WL 3648949, at *3.  "The Court will therefore apply an hourly rate of $75 for the time expended by Plaintiff's paralegals." *Id. See also Trujillo*, 2016 WL 6902313, at *7.

Regarding the number of hours expended by Ms. Law, her total hours are reduced by 2.4 hours, as discussed above, for a total of 3.4 hours.  With respect to the number of hours expended by Mr. Guthrie, the Court finds that the amounts indicated for certain tasks are reasonable; however, some of the time expended is unreasonable, duplicative, or inadequately documented and should be reduced.  On November 7, 2017, Mr. Guthrie recorded 0.80 hours (48 minutes) reviewing "filed documents" and the Court's Scheduling Order, "downloading" the Court's

---

[3] This amount consists of the amount of time billed by Ms. Moore (4.7 hours) minus the Court-recommended reduction in time spent in excessive or duplicative tasks (2.5 hours), for an adjusted time of 2.2 hours multiplied by Ms. Moore's reduced hourly rate of $250 per hour.

Standing Orders, preparing a letter to the California Commission on Disability Access, and sending copies of the Complaint to the Commission and to Plaintiff.  (Doc. 15-6, Ex. A.)  Mr. Guthrie's time of 48 minutes for review of documents his office prepared and filed, and for reviewing the Court's standard scheduling order and standing orders, is excessive.  *See Hensley*, 461 U.S. at 433–34 (hours requested may be reduced where expenditure of time deemed excessive, duplicative, or otherwise unnecessary).  On November 23, 2016, Mr. Guthrie recorded 0.60 hours (36 minutes) receiving and reviewing "for accuracy" the summonses for Defendants. (Doc. 15-6, Exhibit A; *see* Docs. 7, 8 & 9.)  The Court finds that only 0.50 hours of the time expended by Mr. Guthrie on these activities is reasonable; thus, a reduction of 0.90 hours is warranted.

Accordingly, the Court recommends Plaintiff be awarded 7.1 hours of paralegal time expended at an hourly rate of $75 (3.4 hours for Ms. Law and 3.7 hours for Mr. Guthrie), for a total of $532.50.

### (iv)     Litigation Expenses and Costs

Plaintiff seeks to recover costs in the amount of $1,552.00.  (Doc. 15-1, 8:6–9:7; Doc. 15-2, ¶¶ 10–12.)  In Section 12205 of the ADA, Congress authorized a district court, in its discretion, to allow the prevailing party other than the United States to recover a reasonable attorney's fee, including litigation expenses and costs.  42 U.S.C. § 12205.  The statutory provisions of the ADA provide direct authority for the award of expert witness fees as litigation expenses under the ADA. *See Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002).  The costs here include expenses for the court filing fee, costs of service, and a fee for a pre-filing site inspection of the Property, which are compensable pursuant to 42 U.S.C. § 12205 and *Lovell*.  303 F.3d at 1058.  Plaintiff's overall litigation expenses and costs are compensable and should be awarded.  Accordingly, it is recommended that Plaintiff be awarded the sum of $1,552.00 for litigation expenses and costs.

//

//

//

//

### e.    Conclusion

For the reasons set forth above, the Court recommends Plaintiff be awarded the following fees:

| Professional | Hourly Rate | Hours | Total |
|---|---|---|---|
| Ms. Tanya Moore | $250 | 2.2 | $550.00 |
| Ms. Whitney Law | $75 | 3.4 | $255.00 |
| Mr. David Guthrie | $75 | 3.7 | $277.50 |
| | | Total Fees | $1,082.50 |

Additionally, Plaintiff should be awarded $1,552.00 for the costs of suit and $4,000 in statutory damages.  Thus, the total award of damages, fees, and costs recommended is $6,634.50.

## IV.    RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that:

1.    Plaintiff's motion for default judgment be GRANTED IN PART as specified below;

2.    Judgment be entered in Plaintiff's favor and against Defendants Dirhem Hasan d/b/a Latino Liquor; Salah Hasan d/b/a Latino Liquor; and Othman Altam;

3.    Defendants be found and declared to be in violation of Title III of the Americans with Disabilities Act;

4.    Plaintiff be awarded statutory damages under the Unruh Act in the amount of $4,000;

5.    Plaintiff be awarded reasonable attorney's fees in the amount of $550.00 (2.2 hours at $250 per hour), paralegal fees in the amount of $532.50 (3.4 hours at $75 per hour and 3.7 hours at $75 per hour), and costs of suit in the amount of $1,552.00; and

6.    Defendants be ordered to make the following modifications to the Property known as Latino Liquor, located at 3331 East Butler Avenue in Fresno, California, such that each item is brought into compliance with the accessibility requirements of the

13

Americans with Disabilities Act and California Code of Regulations, Title 24, as follows:

a.    A van-accessible parking stall measuring at least 96 inches in width with an access aisle measuring at least 96 inches in width, or a van-accessible parking stall measuring at least 132 inches in width with an access aisle measuring at least 60 inches in width, shall be provided;

b.    The curb ramp affording access from the parking area to the entrance shall be located so that it does not project into vehicular traffic lanes, parking spaces, or parking access aisles; and

c.    A clear width of at least 36 inches shall be provided and maintained along all routes of travel through public areas of the subject store.

Furthermore, Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to each of the defendants at the defendant's last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **March 21, 2017**                      /s/ *Sheila K. Oberto*
                                                          UNITED STATES MAGISTRATE JUDGE